**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melvin McGee, | No. CV 08-1769-PHX-DGC (DKD) |
| Plaintiff, | |
| vs. | **ORDER** |
| Officer David Schleifer, et al., | |
| Defendants. | |

Plaintiff Melvin McGee brought this civil rights action under 42 U.S.C. § 1983 against City of Phoenix Police Officers David Schleifer, Steven Klimczak, and Grant Razon (Doc. #33). Before the Court is Defendants' Motion for Summary Judgment (Doc. #40), which is fully briefed (Doc. ##43, 48). Also before the Court are Plaintiff's Motion to Strike Defendants' reply (Doc. #50) and Defendants' Motion to Strike Plaintiff's sur-reply (Doc. #53). The Court will deny the motions to strike and grant Defendants' summary judgment motion.

## I.    Background

Plaintiff's claim arose during the course of his arrest on July 15, 2008 (Doc. #33 at 2). In his Second Amended Complaint, Plaintiff set forth three counts alleging that Defendants used excessive force in violation of the Fourth Amendment (id. at 4-6). Plaintiff claimed Schleifer slammed him to the ground and administered three "hammer strikes" to his face (Count I) (id. at 4). He claimed that while he was lying on the ground, Razon delivered three knee strikes to his back (Count II) (id. at 5). Plaintiff alleged that when

Klimczak arrived on the scene, he observed Schleifer's and Razon's actions and, not only failed to intercede, but administered two taser-stun shocks to Plaintiff even though they were near gasoline pumps (Count III) (id. at 6). Plaintiff claimed that he suffered permanent scarring to his face, head, and shoulder; a dislodged tooth; and psychological damage (id.). He sued for damages and costs (id. at 7).

Defendants filed an Answer to the Second Amended Complaint (Doc. #34), and then submitted their Motion for Summary Judgment (Doc. #40).

**II. Motion for Summary Judgment**

    **A. Defendants' Motion**

        **1. Factual Contentions**

Defendants submit a separate Statement of Facts (DSOF) (Doc. #41), which is supported by Defendants' declarations (id., Exs. A-B, D), and Plaintiff's deposition testimony (id., Ex. C, Pl. Dep., July 17, 2009). Defendants set forth the following facts:

On July 15, 2008, Schleifer and Razon were on patrol, dressed in full police uniform with badges visible, when, just before 8:40 p.m., they stopped in the parking lot of an ARCO AM/PM store on W. Northern Avenue in Phoenix (id., DSOF ¶¶ 1-3). While at the AM/PM, they observed Plaintiff exit the store, followed by the store owner, Gurwinder Chahal (id. ¶ 4). Chahal yelled to Defendants to arrest Plaintiff because Plaintiff had stolen some merchandise from the store (id. ¶ 5). Schleifer gave Plaintiff verbal commands to stop and come to the officers, but Plaintiff ignored those commands; he was fidgety and appeared nervous (id. ¶¶ 6-8). Plaintiff had a plastic grocery bag – not an AM/PM bag – in his hands (id. ¶¶ 10-11).

Because there was reason to believe Plaintiff may have committed a crime, Schleifer decided to conduct an investigative detention to investigate whether Plaintiff committed the crime of theft as Chahal claimed (id. ¶ 14). Schleifer observed Plaintiff make movements to reach either inside the bag or into his pockets; believing that Plaintiff could have been reaching for a weapon and out of concern for his and Razon's safety, Schleifer made the decision to place Plaintiff in handcuffs to perform a pat down search and look inside the bag

(id. ¶¶ 12, 15-16). Schleifer attempted to grab Plaintiff's arm and told Plaintiff to put his hands behind his back to be cuffed; Plaintiff refused to allow Schleifer to handcuff him (id. ¶¶ 17-18). Plaintiff twisted and turned his body and yelled that he was innocent, making it impossible for Schleifer to gain control over him (id. ¶¶ 20-22). Schleifer told Plaintiff to sit down and finally got Plaintiff into a seated position; Schleifer radioed for assistance (id. ¶¶ 23, 25).

Schleifer again told Plaintiff to put his hands behind his back, but Plaintiff did not comply; he turned his body, stood up, and attempted to walk away (id. ¶¶ 26-27). Plaintiff then reached into his pockets; Schleifer instructed Plaintiff to put his hands behind his back and that Schleifer was going to handcuff him (id. ¶¶ 29-30). Both Schleifer and Razon continued to give verbal commands to Plaintiff to put his hands behind his back. Plaintiff refused to comply and began walking away. Defendants perceived this as an attempt to flee on foot (id. ¶¶ 32-33). Schleifer and Razon grabbed Plaintiff's right arm, and Plaintiff lost his balance and fell to the ground (id. ¶¶ 34-35). Defendants then gave more commands to Plaintiff to put his hands behind his back, but Plaintiff refused to comply, instead putting his hands underneath his body (id. ¶¶ 39-40). Defendants tried unsuccessfully to pry Plaintiff's arms out. Plaintiff appeared to reach for something in his pockets (id. ¶ 41). Out of concern for his and the public's safety, Razon delivered three knee strikes to Plaintiff's back, and Defendants again instructed Plaintiff to put his hands behind his back (id. ¶¶ 43-44). Plaintiff yelled and refused to comply (id. ¶ 45).

Klimczak heard the repeated requests for assistance over the radio, and when he arrived, saw that Razon and Schleifer did not have control over Plaintiff and were struggling with him on the ground (id. ¶¶ 46, 49-50). Klimczak heard the verbal commands and observed Plaintiff's refusal to comply, so Klimczak attempted to assist the officers in getting Plaintiff into custody (id. ¶¶ 51-52, 54). Klimczak ordered Plaintiff to stop resisting, but Plaintiff continued to resist. Klimczak tried to gain control over Plaintiff, but could not because Plaintiff was sweaty and had open wounds on his head (id. ¶¶ 55-57). Klimczak placed one hand on Plaintiff's face and tried with his other hand to get control of Plaintiff's

hand that he held under his body (id. ¶ 58).  At this point, Defendants still did not know whether Plaintiff had a weapon (id. ¶ 59).

Schleifer yelled again for Plaintiff to give him his hands and delivered two or three hammer strikes to Plaintiff's face (id. ¶¶ 60-61).  A hammer strike is a closed-handed strike using the part of the hand opposite the thumb so that there is no impact with the knuckles (id.).  Plaintiff still refused to comply with orders to put his hands behind his back and continued to struggle and yell (id. ¶¶ 62-64).  Klimczak told Plaintiff to stop resisting and kicking and to give up his arms.  Klimczak then observed that Plaintiff had his hand near his waistband (id. ¶¶ 65-66).  Klimczak asked two more times that Plaintiff stop resisting. Plaintiff refused to comply, so Klimczak told Plaintiff if he did not place his hands behind his back he would be tased (id. ¶¶ 67-69).  Plaintiff refused to comply, so Klimczak "drive stunned" Plaintiff one time on the upper arm (id. ¶ 70).  "Drive stunning" is a pain compliance technique intended to cause pain without incapacitating the subject.  It involves holding the taser against someone without deploying the probes.  The electrical current does not disrupt voluntary control of muscles (id. ¶ 71).  The "drive stun" cycle to Plaintiff lasted six seconds (id. ¶ 70).

Plaintiff stopped resisting, placed his hands behind his back, and permitted Defendants to handcuff him (id. ¶ 72).  No force was used on Plaintiff after he was handcuffed (id. ¶ 73). Schleifer found a buck knife with a two inch blade in Plaintiff's pocket (id. ¶¶ 76, 78). Schleifer also found crack cocaine and a crack pipe in Plaintiff's pockets (id. ¶ 79). Photographs were taken of Plaintiff's injuries, and the Phoenix Fire Department was called to evaluate Plaintiff in case he may have ingested drugs (id. ¶¶ 86-87).  Plaintiff was uncooperative with the Fire Department and was transported to Phoenix Baptist Hospital (id. ¶¶ 88-90).

A short time later, Plaintiff was released, booked into jail, and charged with possession of narcotic drugs, possession of drug paraphernalia, and resisting arrest (id. ¶ 91). He was later convicted of possession of narcotic drugs (id. ¶ 92).

### 2. Legal Arguments

Defendants move for summary judgment on the grounds that (1) Plaintiff's claim of unlawful detention has not accrued under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994); (2) Defendants are entitled to qualified immunity; and (3) there is no evidence that a policy, custom, or practice caused a violation of Plaintiff's constitutional rights (Doc. #40).

Defendants assert that Plaintiff was convicted of possession of narcotic drugs, evidence of which was uniquely available as a result of the investigative detention by Defendants on July 15, 2008 (<u>id.</u> at 9). Defendants argue that if the initial detention of Plaintiff was unlawful, then the charges stemming from that detention would be excluded. Thus, Plaintiff's claim that his detention was unlawful necessarily implies the invalidity of his conviction for possession of narcotic drugs (<u>id.</u>). For this reason, Defendants contend that Plaintiff's claim for unlawful detention is barred by <u>Heck</u> and must be dismissed (<u>id.</u>).

Defendants next argue that they have qualified immunity because Plaintiff's detention was lawful and they did not use excessive force (<u>id.</u> at 10). Defendants assert that they had reasonable suspicion that Plaintiff committed a crime and, given the circumstances, they were permitted to conduct an investigative detention and handcuff Plaintiff during that detention (<u>id.</u> at 10-11, citing <u>Terry v. Ohio</u>, 392 U.S. 1 (1968) and <u>United States v. Thompson</u>, 597 F.2d 187 (9th Cir. 1979)). Defendants assert that their valid concern for their safety and the public's safety allowed them to restrict Plaintiff's liberty long enough to perform a pat down and search the grocery bag, and that no reasonable jury could find they violated the Fourth Amendment by detaining Plaintiff or handcuffing him (<u>id.</u> at 11-12).

As to the force Defendants employed, they argue that the circumstances confronting them – Plaintiff reaching into a bag and walking away such that it appeared he was attempting to flee, and not knowing whether Plaintiff had a weapon – led to a split-second decision to respond with aggressive steps to restrain Plaintiff before he injured or killed someone (<u>id.</u> at 12-13). Defendants note that their decision is entitled to deference, and that their use of force was reasonable given Plaintiff's repeated failure to comply with their commands (<u>id.</u> at 13-15).

Defendants submit that even if their conduct was found to be a violation of Plaintiff's constitutional rights, Plaintiff cannot show that the rights violated were clearly established (id. at 15). They contend that even if an officer is mistaken about the appropriate level of force that can be legally used, it is the reasonableness of the officer's belief about the level of force that matters, and here, reasonable officers would have believed that the amount of force used was reasonable (id. at 15-16).

Defendants further argue that based on Klimczak's observations when he arrived on the scene – that Plaintiff was struggling with the officers and ignoring commands – he had no basis to conclude that Razon and Schleifer were subjecting Plaintiff to objectively unreasonable force. Therefore, he had no duty to intercede (id. at 16-17).

Finally, Defendants assert that Plaintiff's claim against Defendants in their official capacity cannot succeed because there is no evidence of any policy, custom, or practice that caused a constitutional violation (id. at 17-18).

## B. Plaintiff's Response[1]

### 1. Factual Contentions

Plaintiff opposes Defendants' motion (Doc. #43). He submits his own separate Statement of Facts (PSOF) (Doc. #44), which is supported by his deposition (Doc. #45, Ex. A); Klimczak's, Schleifer's, and Razon's responses to interrogatories (id., Exs. B, H-J); a copy of the July 15, 2008 Phoenix Baptist Hospital record (id., Ex. C); a copy of state-law statutes regarding self-defense and duress (id., Ex. D); excerpts from the Phoenix Police Department Operations Order governing use of force (id., Ex. E-F); a copy of the July 15, 2008 police report (id., Ex. G); Schleifer's, Razon's, and Klimczak's responses to requests for admissions (id., Ex. H-J); and Plaintiff's affidavit (id., Ex. K). Plaintiff sets forth the following facts:

Plaintiff was in the ARCO AM/PM store when he realized that he had left his wallet in his employer's work truck, so he returned the ice cream bars he was carrying to the ice box

---

[1] The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion (Doc. #42).

and went outside to use the phone to call his employer (Doc. #44, PSOF ¶¶ 2-3). The store owner, Chahal, then accused him of theft (id. ¶ 3).

Schleifer, while cursing and using abusive language, told Plaintiff to stop and come over to him and to place Plaintiff's hands behind his back (id. ¶ 5). Plaintiff stopped, placed a hand in the grocery bag, and displayed the items inside (id. ¶ 6). Schleifer yelled "don't do that," and Plaintiff then poured the contents of the bag onto the ground to show that there was nothing from the AM/PM store (id.). Schleifer would not listen to Plaintiff's pleas of innocence and became verbally abusive (id.). Schleifer began to try to place handcuffs on Plaintiff. Plaintiff asked why he was being cuffed and he asked the officers to question the store owner (id. ¶ 8). Plaintiff was never told that he was under arrest (id. ¶ 9). Schleifer grabbed Plaintiff's arm and told Plaintiff to put his hands behind his back (id. ¶ 10). Plaintiff pulled back his arm and stepped away (id. ¶ 11). Schleifer patted Plaintiff down and seated Plaintiff on the ground and again told him to put his hands behind his back (id. ¶ 12). Plaintiff stood up, at which time Schleifer said nothing (id. ¶ 13).

Schleifer and Razon then tackled Plaintiff to the ground head first (id. ¶ 14). Razon administered three knee strikes to Plaintiff's lower back near his spine as Schleifer held Plaintiff down by his face. Plaintiff had one hand cuffed behind his back as his clothing was ripped from his body (id. ¶ 15). Plaintiff, who was bleeding from facial and head injuries and in fear for his life, resisted as necessary to counter the force being used against him (id.). Schleifer administered two or three hammer fist strikes to Plaintiff's face while Plaintiff laid on the ground (id. ¶ 16).

Klimczak arrived after Razon delivered the knee strikes to Plaintiff's back, but before Schleifer's hammer fist strikes to his face (id. ¶ 17). Klimczak touch stunned Plaintiff even though he was laying 10 feet from gas pumps (id. ¶¶ 18, 28).

Plaintiff used no drugs for the two days prior to July 15, 2008 (id. ¶ 25). Plaintiff was carrying a buck knife with a 2-inch blade,[2] which he did not consider to be weapon, and there

---

[2] Plaintiff stated that his buck knife had a two-inch, "little bitty hook blade" that he used to clean his fingernails (Doc. #45, Ex. A, Pl. Dep. 34:12-35:4).

were no weapons charges or assault charges filed against him (<u>id.</u> ¶¶ 24, 80). The resisting-arrest charge against Plaintiff was dismissed by the court (<u>id.</u> ¶ 27).

Throughout the incident with Defendants, Plaintiff believed that he could have been seriously injured or killed (<u>id.</u> ¶ 19). Plaintiff did not use any assault-like or violent actions against Defendants, and he never attempted to flee the scene (<u>id.</u> ¶ 20).

## 2. Legal Arguments

Plaintiff argues that <u>Heck</u> does not apply to his claim because he is not challenging the underlying criminal charge; rather, he is alleging that excessive force occurred at the time of arrest (Doc. #43 at 9, citing <u>Guerrero v. Gates</u>, 442 F.3d 697 (9th Cir. 2006)).

Plaintiff also argues that Defendants are not entitled to qualified immunity (<u>id.</u> at 10). He asserts that his Fourth Amendment rights were clearly established and Defendants were aware of those rights yet disregarded them (<u>id.</u>). Plaintiff notes that the Phoenix Police Department's own policy directs officers to use the minimum force required to accomplish the objective (<u>id.</u>). Plaintiff argues that officials have a duty to know the law governing the area they work in and also to take steps to ascertain whether their actions are lawful. He maintains that they cannot simply rely on their own idea of what the law might be (<u>id.</u>).

Plaintiff concedes that it was lawful for Defendants to stop him to investigate the store owner's allegation of theft, but he submits that once he emptied the contents of his grocery bag to the ground to show that he had no ice cream bars, it was unnecessary to handcuff him (<u>id.</u> at 11). Plaintiff argues that there was no probable cause or facts that would lead to the conclusion that Plaintiff committed a crime (<u>id.</u>).

Plaintiff contends that contrary to their assertions, Defendants' use of force was excessive in response to his protest to being handcuffed after he disclosed the contents of his bag (<u>id.</u> at 12-13). He notes that Defendants "brutally slam tackled" him to the ground and struck him numerous times as he lay bleeding on the ground (<u>id.</u>). Plaintiff argues that under state law, when he was faced with physical force that could result in serious physical injury, he had a right to respond in the manner he did (<u>id.</u>). He notes that the resisting-arrest charge against him was dismissed (<u>id.</u> at 14).

Plaintiff argues that Klimczak violated well-established law because he knew that the force used by Razon and Schleifer was objectively unreasonable yet failed to intercede and proceeded to stun-tase Plaintiff in a dangerous, combustable environment (id. at 14).

Lastly, Plaintiff asserts that Defendants' policy/official-capacity argument is void because his suit is against Defendants in their individual capacities only (id. at 15).

## C.    Defendants' Reply

In reply, Defendants argue that Plaintiff failed to comply with Local Rule of Civil Procedure 56.1(b)(1) because he did not set forth correspondingly numbered paragraphs in response to DSOF (Doc. #48 at 2). Defendants therefore assert that their facts are deemed admitted (id.). They further assert that even when considering PSOF, they fail to demonstrate any genuine issue of material fact (id.).

Defendants explain that they are only seeking dismissal of Plaintiff's claim for unlawful detention pursuant to Heck. They are not seeking dismissal of his excessive force claim on that basis (id. at 3).

Defendants maintain that they do not lose qualified immunity merely because their conduct may have violated an administrative or department policy (id. at 4). Defendants reiterate that their actions were reasonable under the circumstances and therefore did not violate any clearly established right (id. at 4-5). Defendants repeat their argument that their detention of Plaintiff was lawful (id. at 6). As to Plaintiff's claims that state law justified his resistance, Defendants assert that those state laws are applicable only in defense to a charge of resisting arrest or assault on a police officer (id. at 6-7). Defendants argue that given the facts confronting them, their actions in response to Plaintiff's admitted resistance were reasonable, whether or not they strictly complied with Phoenix Police Department policy (id. at 7-8).

Defendants argue that with respect to Klimczak's alleged failure to intercede, the facts show that when Klimczak arrived on the scene and saw the parties struggling, he did not know the facts leading to the struggle and thus could not have known whether the use of hammer fist strikes by Schleifer was objectively unreasonable (id. at 10). Defendants further

argue that the out-of-circuit cases cited to by Plaintiff are distinguishable from this case and fail to support a conclusion that Klimczak should have acted to prevent any alleged constitutional violation (id. at 11). Defendants reassert that there is no evidence that a policy or custom caused a violation of Plaintiff's constitutional rights (id.).

With their reply, Defendants submit a Controverting Statement to PSOF, which sets out 90 paragraphs corresponding to PSOF (Doc. #49). In this document, Defendants object to numerous PSOF on the grounds that they are irrelevant, compound, vague, lack foundation, or misstate evidence (id.). Defendants also argue that Plaintiff's affidavit should not be considered because Plaintiff did not specifically reference it in his PSOF and some of his averments contradict his deposition testimony or constitute hearsay (id. at 22).

### D. Supplemental Filings

Plaintiff moves to strike Defendants' Controverting Statement to PSOF on the ground that the Federal Rules of Civil Procedure do not provide for such a filing (Doc. #50). Plaintiff also submits a "Judicial Notice" in which he responds to Defendants' reply arguments and restates his claims regarding the right to self-defense under state law, Defendants' violation of department policy, whether qualified immunity applies, and Defendants' liability in their individual capacity (Doc. #51).

Defendants oppose Plaintiff's Motion to Strike and argue that the Local Rules allow for responses to statements of facts in a separate filing (Doc. #52). And they file their own Motion to Strike Plaintiff's Judicial Notice on the basis that it is not permitted under the Rules of Procedure (Doc. #53).

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and

identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995); <u>see Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249; <u>Devereaux</u>, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. <u>Id.</u> at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. <u>Id.</u> at 255.

**B.    Excessive Force**

A claim that law enforcement officers have used excessive force in the course of an investigatory stop, arrest, or other "seizure" of a citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Ramirez v. City of Buena Park</u>, 560 F.3d 1012, 1020 (9th Cir. 2009) (Fourth Amendment protections extend to investigatory stops that fall short of traditional arrest). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396. When determining whether the totality of the circumstances justifies the degree of

force, the court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id.</u> at 397 (citations omitted). Determining whether force is reasonable requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests." <u>Id.</u> at 396 (citation omitted).

**IV.    Procedural Matters**

Initially, the Court rejects Defendants' assertion that DSOF are deemed admitted because Plaintiff did not set out specific corresponding paragraphs in his PSOF (<u>see</u> Doc. #48 at 2). Defendants cite no prejudice due to Plaintiff's failure to fully comply with the Local Rule. More importantly, PSOF clearly establishes disputes with DSOF (<u>see</u> Doc. #44). In light of Plaintiff's *pro se* status and the requirement that the Court construe his pleadings liberally and afford him the benefit of any doubt, the Court will consider his PSOF. <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988); <u>see also</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

The Court will also deny Plaintiff's Motion to Strike Defendants' Controverting Statement of Facts (Doc. #50) and Defendants' Motion to Strike Plaintiff's Judicial Notice (Doc. #53). <u>See</u> <u>RDF Media Ltd. v. Fox Broadcasting Co.</u>, 372 F. Supp.2d 556, 566 (C.D.Cal. 2005) (motions to strike are generally disfavored). As to Defendants' numerous objections to PSOF within their Controverting Statement to PSOF (Doc. #49), the Court confirms that it may not consider inadmissible or unsupported facts in its summary judgment analysis and therefore has not relied on any evidence that would not be admissible at trial. <u>See</u> Fed. R. Civ. P. 56(e); <u>Orr v. Bank of Am.</u>, 285 F.3d 764, 773 (9th Cir. 2002).

Although Plaintiff was not granted leave to file his Judicial Notice (Doc. #51), which is construed as a sur-reply, he understandably felt obligated to respond to Defendants'

extensive reply-Controverting Statement to PSOF. Because of his pro se status, and the fact that his sur-reply does not alter the summary judgment analysis, Plaintiff's filing will be considered.

## V.     Summary Judgment Analysis

### A.     <u>Heck</u>

According to Defendants, their argument for dismissal under <u>Heck</u> applies only to Plaintiff's claim for unlawful detention (Doc. #48 at 3). But there is no unlawful detention claim raised in this action. "Plaintiff's sole ground for relief is that Defendants used excessive force" (Doc. #32 at 1; <u>see</u> Doc. #33 at 4-6). In his response memorandum, Plaintiff reiterates that his claim is one of excessive force and that he is not challenging his underlying criminal conviction (Doc. #43 at 9).[3] Consequently, Defendants' <u>Heck</u> argument provides no basis for summary judgment.

### B.     Policy, Practice, or Custom

Similarly, Defendants' argument for summary judgment on the official-capacity claims is futile because Plaintiff did not allege a violation stemming from a policy, practice, or custom (<u>see</u> Doc. #40 at 17-18; Doc. #33 at 4-6). Plaintiff sued Defendants solely in their individual capacity for their individual participation in the alleged excessive force incident (<u>id.</u>; Doc. #43 at 15).

### C.     Excessive Force Claim

Defendants assert that they are entitled to qualified immunity on Plaintiff's excessive-force claim (Doc. #40 at 9-10). A defendant is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two questions. One question is whether the facts alleged or

---

[3] Plaintiff responds to Defendants' unlawful-detention argument by asserting that there was no probable cause to arrest him and therefore the detention was unlawful (Doc. #43 at 11). But the dispute concerns whether Defendants' attempt to handcuff Plaintiff during the investigatory stop was reasonable in response to the threat posed by Plaintiff. That issue is addressed in the excessive-force analysis. <u>See</u> <u>Graham</u>, 490 U.S. at 396-97.

shown by the plaintiff establish a constitutional violation. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). A negative answer to this question ends the analysis, with qualified immunity protecting the defendant from liability. <u>Id.</u> The other question is whether the right at issue was clearly established at the time. <u>Id.</u> "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Id.</u> at 202. Courts have discretion in deciding which of these two questions to address first depending on the circumstances of a case. <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818-19 (2009). Here, the Court will first address whether the facts alleged by Plaintiff establish a Fourth Amendment violation.

The Court reiterates that at summary judgment, all facts and inferences must be viewed in favor of the nonmovant. <u>Anderson</u>, 477 U.S. at 255. Therefore, although the excessive-force analysis requires that the circumstances be viewed from that of a reasonable officer, the circumstances are defined by the facts most favorable to Plaintiff.

In its examination of the use of force claim, the Court conducts a three-step analysis assessing (1) the nature of force inflicted, (2) the governmental interests at stake, and (3) whether the force used was necessary. <u>Miller v. Clark County</u>, 340 F.3d 959, 964 (9th Cir. 2003); <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1279-82 (9th Cir. 2001) (citations omitted).

### 1. Force Inflicted

Plaintiff alleges that Defendants tackled him to the ground, delivered numerous knee strikes to his back and hammer strikes to face, and then used a taser to shock, or touch-stun him, twice (Doc. #33 at 4-6). The Phoenix Police Department policy on the use of force describes knee strikes and hammer fist strikes as techniques that may result in injury (Doc. #45, Ex. F at 2). In a recent case involving the use of a taser in the touch-stun mode, the Ninth Circuit found that the taser is more than a "trivial use of force but less than deadly force," and that a single application to the back of a suspect's hand was "a serious intrusion into the core of the interest protected by the Fourth Amendment: the right to be 'secure in [our] persons.'" <u>Mattos v. Agarano</u>, 590 F.3d 1082, 1087 (9th Cir. 2010) (quoting U.S. Const. amend. IV). In light of this precedent and Plaintiff's allegations, the Court finds that

the amount of force used by Defendants was more than insignificant.

### 2. Governmental Interests at Stake

The importance of the governmental interests is taken into account by evaluating the Graham factors, which include the severity of the crime, whether the plaintiff posed an immediate threat to safety, and whether the plaintiff resisted arrest or tried to evade arrest. Graham, 490 U.S. at 396. In some cases, courts may consider an additional factor in the Graham analysis – whether alternative methods of capturing or subduing the plaintiff were available. Smith v. City of Hemet, 394 F.3d 689, 701, 703 (9th Cir. 2005) (citing Chew v. Gates, 27 F.3d 1432, 1441 n. 5 (9th Cir. 1994)).

There is no dispute that Chahal, the store owner, followed Plaintiff out of the AM/PM and yelled to Schleifer and Razon that Plaintiff had stolen merchandise (Doc. #41, Ex. C, Pl. Dep. 23:9-13: 24:5-8). Under Arizona law, theft of property valued at less than $1,000 constitutes a misdemeanor, and theft of properly valued over $1,000 constitutes a felony. Ariz. Rev. Stat. § 13-1802(G). Thus, there was a governmental interest in investigating Plaintiff. See Miller, 340 F.3d at 964 (government has a legitimate interest in apprehending criminal suspects). Indeed, it would have been poor police work for Defendants to fail to investigate the situation. See Terry, 392 U.S. at 23. This first Graham factor therefore favors Defendants.

The second Graham factor – whether Plaintiff posed an "immediate threat to the safety of the officers or others" – is considered the most important factor when assessing the legitimacy of the government's interests. Id. According to Plaintiff's facts, when Schleifer first told Plaintiff to stop, Plaintiff stopped, told Schleifer that he had not taken anything from the store, opened the grocery bag he was carrying to display the items inside, and then poured the contents of bag onto the ground to show that there was nothing in the bag from the AM/PM store (Doc. #44, PSOF ¶ 6; Doc. #45, Ex. A, Pl. Dep. 24:23-25:4, 26:2-10).[4] Also, Plaintiff had not used any drugs or alcohol on the date of the incident (Doc. #44, PSOF ¶ 7).

---

[4] The grocery bag contained fish and fries that Plaintiff purchased from the grocery store for dinner (Doc. #45, Ex. A, Pl. Dep. 58:3-11; 59:9-19).

At this point, Plaintiff did not appear to pose much of a threat.

But in light of the finding on the first <u>Graham</u> factor that Defendants had an interest if not a duty to investigate Plaintiff further, it was not unreasonable for Schleifer to proceed to question Plaintiff. In <u>Graham</u>, the Court recognized that police officers have the right to make an investigatory stop, which carries with it a right to use some degree of physical coercion if necessary. 490 U.S. at 396 (citing <u>Terry</u>, 392 U.S. at 22-27).

Returning to Plaintiff's factual contentions, after he emptied his bag, he moved closer to Schleifer, but Schleifer tried to grab Plaintiff's arm, at which point Plaintiff stepped away and told Schleifer that he did not steal anything (Doc. #45, Ex. A, Pl. Dep. 26:8-17). Schleifer finally got a hold of Plaintiff, patted him down, and seated him on the ground (<u>id.</u> 34:1-5; Doc. #44, PSOF ¶ 12). Schleifer told Plaintiff to put his hands behind his back, but Plaintiff stood up and tried to go back into the store to get the store owner to tell the police the truth (Doc. #45, Ex. A, Pl. Dep. 28:4-8). When Plaintiff stood up, Schleifer did not say anything, like "sit back down." In fact, when Plaintiff stood up, he and Schleifer talked briefly (<u>id.</u> 28:16-29:10; Doc. #44, PSOF ¶ 13). Schleifer again told Plaintiff to put his hands behind his back, but Plaintiff walked away from Schleifer towards the store (Doc. #45, Ex. A, Pl. Dep. 32:10-22). Schleifer and Razon then grabbed Plaintiff's arm and tackled him (<u>id.</u> 32:24-33:9). Plaintiff does not dispute that the officers repeatedly told him to put his hands behind his back but he refused to do so, even after Razon delivered knee strikes to Plaintiff's back and Schleifer administrated hammer strikes to his face (<u>id.</u> 33:14-25, 36:7-37-22).

On this record there may not have been a need to handcuff Plaintiff because he was speaking with Schleifer and Schleifer had conducted a pat down, but that did not grant Plaintiff the right to offer resistance. <u>See</u> <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 922 (9th Cir. 2001) (in analyzing excessive-force claim, the court noted that arrestee "stiffened her arm and attempted to pull it away, which was impermissible regardless of whether [the defendant] had probable cause to arrest her"). "An individual's limited right to offer reasonable resistance is only triggered by an officer's bad faith or provocative conduct." <u>Id.</u> at 921 (citing <u>United States v. Span</u>, 970 F.2d 573, 580 (9th Cir. 1992)).

Further, the Ninth Circuit has found that although "handcuffing substantially aggravates the intrusiveness of otherwise routine investigatory detention and is not part of a typical Terry stop," handcuffing during an investigatory stop may nonetheless be reasonable if there is a concern for safety or that the suspect may flee. United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir. 1982).

In light of Chalah's representation to Defendants that Plaintiff stole merchandise, there was an articulable basis for believing that Plaintiff may have committed a crime. See Chew, 27 F.3d at 1441. The fact that Plaintiff emptied the plastic bag on the ground did not preclude the possibility that he had stolen merchandise concealed on his person. Plaintiff's own facts demonstrate that Schleifer and Razon tackled him only after he repeatedly refused to comply with their commands and began to walk away. Nor does Plaintiff deny that during the ensuing struggle with Defendants he had one hand under his body or near his waist, leading, as Defendants claim, to the possibility that he had a weapon (see Doc. #41, DSOF ¶¶ 40-42). Plaintiff's continued refusal to comply with orders and his resistance against Defendants contributed to the impression that he posed a threat. See United States v. Taylor, 716 F.2d 701, 709 (9th Cir. 1983) (handcuffing during investigatory stop justified where suspect twice disobeyed order to raise hands and made furtive movements inside truck where his hands could not be seen); cf. Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003) (handcuffing a tax-crime suspect during an investigatory detention, where the suspect simply asked several times to see a search warrant, clearly violated the Fourth Amendment); United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990) (use of handcuffs during investigatory stop not justified because suspect fully cooperated with police orders).

In short, Plaintiff was accused of a crime by the store owner in front of the officers, refused to comply with the officers' orders, began to walk away, physically resisted and struggled after the officers tackled him and while they were trying to handcuff him, and held his hands in a position that reasonably suggested the possibility of a weapon. Given these facts, and the lack of any evidence that Defendants' use of force was in bad faith, the Court concludes that the second Graham factor favors Defendants.

### c. Resistence/Attempt to Flee

The Court rejects Plaintiff's contention that state law justified his resistance because it constituted self-defense (see Doc. #43 at 12). State law provides that the use of force in self-defense is not justified to resist an arrest, even if the arrest is unlawful, unless the force used by the officer exceeds that allowed by law. Ariz. Rev. Stat. § 13-404(B)(2). Nor may self-defense be claimed where the individual provoked the other's use of force. Ariz. Rev. Stat. § 13-404(B)(3).[5]

Schleifer's initial attempt to grab Plaintiff's arm and subdue him did not amount to force that exceeds that allowed by law. From there, the escalation in Defendants' use of force directly correlated to Plaintiff's continued struggle against Defendants' efforts to gain control over him and Plaintiff's refusal to comply with their orders. Thus, Plaintiff's own actions provoked the use of force employed against him. See State v. Williams, 644 P.2d 889, 892 (Ariz. 1982) (even if police employed unlawful physical force when trying to subdue the defendant, the defendant could not claim self-defense where he provoked the use of force against him by participating in a disturbance and making no attempt to communicate that he wished to withdraw from the disturbance or be taken out peacefully).

Plaintiff's conduct amounted to what the Ninth Circuit classifies as "active resistance" because he resisted Defendants' attempts to control him. Brooks v. City of Seattle, --- F.3d ----, 2010 WL 1135776, at *9 (9th Cir. Mar. 26, 2010) (citing Chew, 27 F.3d at 1442). Under the Phoenix Police Department's policy on the use of force, Plaintiff's resistance constituted "defensive resistance" because he did not attack or strike any Defendant, and thus did not use force against them (Doc. #45, Ex. F at 1 (defining "defensive resistance" as "physical actions that attempt to prevent an officer's control, but does not involve attempts to harm the officer")). Whether termed active or defensive, Plaintiff's actions and his repeated refusal to cooperate with Defendants' requests constituted resistance sufficient to

---

[5] State law provides that one who provokes another's use of force can only claim self-defense if the provoker "withdraws from the encounter or clearly communicates to the other his intent to do so reasonably believing he cannot safely withdraw from the encounter." Ariz. Rev. Stat. § 13-404(B)(3)(a).

tip this factor in Defendants' favor.

### d.  Availability of Alternative Methods to Subdue

Plaintiff argues that Defendants actions violated department policy governing the use of force (Doc. #43 at 6).  He points out that under the policy's "Guidelines for Use," knee strikes and hammer fist strikes are techniques that may be used when facing "active aggression level of resistance," not defensive resistance, as the Phoenix Department Policy defined Plaintiff's conduct (id.; Doc. #45, Ex. F at 1-2).  The Guidelines for Use further instruct that when administering these type of techniques, officers are to avoid the neck and back areas (Doc. #45, Ex. F at 2).  The only techniques that may be used to strike the face and head are closed fist, palm-heel, and elbow strikes – not hammer fist strikes (id.).  With respect to the use of tasers, the policy explicitly provides that they are not to be used near gas fumes because the taser could ignite any combustible environment (id., Ex. E at 2-3).

Defendants' response to these arguments is unavailing.  For example, regarding Schleifer's use of hammer fist strikes to Plaintiff's head, Defendants essentially argue that it is not logical that this type of strike is excluded from the policy's list of techniques that may be used to strike the head (Doc. #48 at 7).  Defendants absurdly attempt to justify the use of a taser near flammable gases by the fact that no explosion or fire actually resulted (id.).  Nonetheless, Defendants' failure to comply with department policy does not establish a constitutional violation.  See U.S. v. Haswood, 350 F.3d 1024, 1029 (9th Cir. 2003) (an F.B.I. agent's failure to follow governmental policy on recording interviews does not necessarily create a constitutional violation); U.S. v. Goodwin, 57 F.3d 815, 818 (9th Cir. 1995) (an assistant U.S. attorney's failure to comply with internal department policy does not establish a constitutional deprivation).  The provisions to avoid knee strikes to certain areas and avoid deploying tasers near flammable gas is for the protection of officers themselves as much as to avoid harming the suspect (see Doc. #45, Ex. F at 4 "[n]ever use the knee to strike hard or resilient targets . . . . If you do, you run the risk of damaging your knee much more than you injure your attacker").

As set forth above, Plaintiff repeatedly refused to comply with Defendants' commands

and physically resisted their attempts to control and handcuff him. Even with the advantage of hindsight, Plaintiff does not suggest any alternative methods Defendants may have employed to gain control over him once he resisted. Defendants' repeated verbal commands and warnings constituted less forceful means of trying to subdue Plaintiff. See Miller, 340 F.3d at 966. While the methods Defendants ultimately used to subdue Plaintiff could have been better applied, there is no evidence of alternative, non-force measures that were available. Thus, this additional factor weighs slightly in Defendants' favor.

In summary, the relevant Graham factors support the conclusion that Defendants had an interest in using force to bring Plaintiff under their control for investigative purposes. See Graham, 490 U.S. at 396.

### 3. Necessity of Force

The dispositive question in the objective-reasonableness analysis is whether the force used was reasonably necessary under the circumstances. Miller, 340 F.3d at 966. This determination is judged from the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396-97. "[P]olice officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. Summary judgment is appropriate if, after resolving all factual disputes in the plaintiff's favor, the Court concludes that the officers' use of force was objectively reasonable. See Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).

The undisputed facts reflect that Defendants' escalating use of force was in response to Plaintiff's ongoing resistance and repeated refusals to comply with their commands (see Doc. #45, Ex. A, Pl. Dep. 37:18-22). Plaintiff even testifies that before Klimczak touch-stunned him, Klimczak again told him to put his hands behind his back or Klimczak "would stun gun" him, and Plaintiff still refused to put his hands behind his back (id. 38:9-19). Plaintiff confirms that Defendants did not use any further force once he was handcuffed (id. 41:6-14). Cf. Headwaters Forest Def. v. County of Humbolt, 276 F.3d 1125, 1130 (9th Cir. 2002) (once a suspect surrenders or is under control, the use of further force is unreasonable).

On this record, Defendants' use of force was objectively reasonable.

**D.    Failure to Intercede**

Plaintiff's claim against Klimczak includes the allegation that he failed to intercede and end the use of unreasonable force when he arrived on the scene and observed Schleifer deliver three hammer fist strikes to Plaintiff's face (Doc. #33 at 6). "[O]fficers have a duty to intercede where their fellow officers violate the constitutional rights of a suspect or other citizen." U.S. v. Koon, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996).

There is no dispute that Klimczak did not arrive on the scene until Plaintiff was on the ground struggling with Schleifer and Razon (Doc. #45, Pl. Dep. 38:5-10). Plaintiff does not dispute that Klimczak did not know the circumstances that led to the struggle, nor did he know whether Plaintiff was armed (Doc. #41, Ex. D, Klimczak Decl. ¶¶ 7-8, 13). And Klimczak clearly could see that Plaintiff was struggling and resisting the officers' efforts to subdue him. Given these undisputed facts, Klimczak could not have known whether the force employed against Plaintiff was unreasonable. Plaintiff's conclusory assertion that Klimczak "knew the force used by Razon and Schleifer was objectively unreasonable," without more, is insufficient to establish a material factual dispute (see Doc. #43 at 14). See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("summary judgment motion cannot be defeated by relying solely on conclusory allegations"). Moreover, the Court's conclusion that the force used by Defendants was objectively reasonable precludes a finding that Klimczak failed to intercede to prevent a constitutional violation.

**E.    Conclusion**

When viewing the facts in Plaintiff's favor and considering the totality of the circumstances, the Court finds that Defendants' use of force did not violate Plaintiff's Fourth Amendment rights. In light of this determination, the Court need not consider the second question in the qualified immunity analysis. Saucier, 533 U.S. at 201. Defendants are entitled to qualified immunity, and their summary judgment motion will be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. #40) and Motion to Strike (Doc. #53), and Plaintiff's Motion to Strike (Doc. #50).

(2) Defendants' Motion to Strike (Doc. #50) and Plaintiff's Motion to Strike (Doc. #53) are **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. #40) is **granted**.

(4) The Clerk of Court must dismiss this action and enter judgment accordingly.

DATED this 8th day of April, 2010.

_____
David G. Campbell
United States District Judge